**Glenn H. HUFFINE et ux., Jo R. Huffine, Appellants,**

v.

**John W. RIADON, III, et al., Appellees.**

Supreme Court of Tennessee.

Sept. 27, 1976.

Ronald B. Buchanan, Madison, for appellants.

Carl H. Oldham, Hendersonville, for appellees.

## OPINION

BROCK, Justice.

Although the parties have described this action as one to reform a written instrument, it is, in essence, one by a junior mortgagee to have the lien of a senior mortgage subordinated, in part, to the lien of the junior mortgage, upon grounds that the senior mortgagee by fraudulent representations, induced the plaintiff junior mortgagee to release a prior lien on the property and take a junior lien.

The plaintiffs, Mr. & Mrs. Glenn H. Huffine, sold a house and lot to the defendants, William and Juanita Hicks. The purchasers paid $5,000.00 cash, assumed a mortgage loan of $27,500.00, and gave a second mortgage to the Huffines to secure the remainder of the purchase price, $27,567.34. Afterwards, the Hickses had difficulty in making the payments and sought assistance from Mr. Hicks' employer, codefendant John Riadon.

Since the summary judgment was based solely upon the complaint and the motion, the transactions between the parties may best be stated by quoting from the complaint:

"(6) On or about July 1, 1974, defendant, John W. Riadon, offered to pay plaintiffs $20,000.00 toward their second mortgage to help his employee, William M. Hicks, out during a financially difficult period. Said offer was conditioned upon plaintiffs executing a release on their second mortgage and agreeing to take a third mortgage for the balance then owing them of $10,818.47, so defendant, Riadon, could secure his payment of $20,000.00 with a second mortgage.

"(7) Plaintiffs accepted Riadon's offer based on the premise that the value of the property was still sufficient to protect the security as to their third mortgage.

"(8) On or about July 9, 1974, plaintiffs did receive the payment of approximately $20,000.00 from defendant, John Riadon, and also received a promissory note of $10,818.47 from William Hicks, et ux., secured by a deed of trust hereto attached as Exhibit D, but not for copy for service of process, and G. G. Garrett, Jr., Trustee under their original second mortgage (sic) to subsequently execute a release thereon, all actions based on the representations of defendant, Riadon. Said deed of trust was taken to the Sumner County courthouse and recorded by defendant, Riadon, upon his suggestion."

Riadon took from the Hickses and recorded a new second mortgage, not in the

amount of $20,000.00, but in the amount of $38,000.00, Riadon having made prior loans to them totaling $18,000.00 for which he now provided security. The Hickses defaulted and Riadon began foreclosure proceedings in November, 1974. He was the sole bidder at the foreclosure sale and purchased the property for $59,500.00. Plaintiffs, upon learning of the amount of the new second mortgage, brought this suit. The relief sought is that the court rearrange the priorities of the liens so that the following order of priority would obtain, to-wit:

1. Costs of foreclosure sale.
2. First mortgage of the Bank of Goodlettsville, in approximate amount of $27,500.00.
3. $20,000.00, *only,* of the debt secured by Riadon second mortgage.
4. Third mortgage of Huffines in account of $10,818.47 plus interest to date.
5. Balance of debt secured by Riadon second mortgage.

The Chancellor granted summary judgment for the defendants, and the plaintiffs have appealed.

The grounds set forth in the motion for summary judgment may be condensed into four propositions, which are argued on appeal, namely, (1) that foreclosure bars any relief to which the plaintiffs may have been entitled had they acted promptly, (2) that a mortgage may secure a pre-existing debt as well as one contemporaneous with the giving of the mortgage, (3) that the plaintiffs may not obtain reformation of their agreement with Riadon since it was never reduced to writing, and (4) that there was no fraud in the transaction since Riadon made the amount of the Hicks's obligation a matter of public record by having the instrument recorded.

██ There is no doubt that a mortgage can be made to secure pre-existing debts. This Court has so decided on several occasions. The question here is not whether the new second mortgage is valid between the parties to it, but whether the enforcement of it in the form it has taken violates the rights of plaintiffs.

██ Nor is it true that the plaintiffs are seeking reformation of an oral agreement. They are seeking to *prove* the oral agreement and representations of Riadon and force him to live up to them. The defendants insist that the oral agreement, if it ever existed, is now merged in the mortgage. "As a result," they conclude, "when the parties entered into a written contract, the writing must be treated as a full, perfect, and correct expression of their intent." Obviously, there is no occasion for application of the parol evidence rule. Plaintiffs do not seek to vary the terms of a written instrument but to show that they were damaged by the alleged fraudulent representations of Riadon.

██ We next consider the matter of timeliness of this suit. According to the complaint, the plaintiffs learned on or about November 15, 1974, that foreclosure proceedings were being instituted. Sometime thereafter, they discovered that Riadon was claiming a lien for $38,000.00 rather than $20,000.00 as he allegedly had represented to them. The amount of the second mortgage, as recorded, was verified by a title search on December 16, 1974. The foreclosure sale took place the next day and the complaint was filed on December 20, 1974. We cannot characterize this as undue delay. There is nothing in the record to show that the Huffines were ever made parties to the foreclosure action, or that, if they were, they were ever apprised that the amount of the claim was not as had been represented. The defendant relies upon cases from other jurisdictions to the effect that any action to reform a mortgage must precede foreclosure. *Williams v. Hatch,* 38 Ala. 338 (1862); *Stephenson v. Harris,* 131 Ala. 470, 31 So. 445 (1901); *Stewart v. Wilson,* 141 Ala. 405, 37 So. 550 (1904); *First Nat. Bank v. Wentworth,* 28 Kan. 183 (1882); *Trachtenberg v. Glen Alden Coal Co.,* 354 Pa. 521, 47 A.2d 820 (1946). We need not determine the accuracy of that statement because, as already pointed out, this is, actually, not a reformation case at

all. The question is not whether the written instrument constituting the new second mortgage reflects the true agreement of the parties to it, the Hicks and Riadon, but to what extent the debt owing to Riadon is entitled to priority over the Huffines' claim.

The crucial question, then, is whether fraud has been alleged. It is not difficult to believe that the plaintiffs would not have given up their priority of security had they known Riadon would make his second mortgage in the amount of $38,-000.00 rather than $20,000.00. The complaint clearly alleges that plaintiffs were induced to release their second mortgage by the representation and promise of Riadon that he would take a new second mortgage in the amount of $20,000.00. His taking of a second mortgage for $38,000.00, instead of the $20,000.00 as promised and represented, clearly would constitute fraud under the circumstances. Misrepresentation of a material fact by one, whereby the action of another has been induced, is a conclusive ground for relief in equity whether such representation was made innocently, through mistake, or willfully with the intent to deceive. *Deadrick v. Mitchell,* 65 Tenn. 35 (1873); *Aldrich v. Scribner,* 154 Mich. 23, 117 N.W. 581 (1908); See also 37 Am.Jur.2d 97–102, 104–109. Furthermore, there can be no doubt of the authority and duty of a court of equity, in a proper case, to reinstate in part or completely, a mortgage lien the release of which has been procured by the fraud of one who stands to profit from the release, at least when the rights of innocent third parties will not be adversely affected by such relief. *McBurney v. Carson,* 99 U.S. [9 Otto] 567, 25 L.Ed. 378 (1879); *Luther v. Clay,* 100 Ga. 236, 28 S.E. 46 (1897); 35 A.L.R.2d 948, 953 et seq. Just such a case is alleged in this complaint.

The defendants argue that the fact that the mortgage was publicly recorded charges plaintiffs with notice and ought to conclude the matter. But the plaintiffs had no occasion to search the records. No *prior* lien is involved. They made no mistake about any defect in the title of which the records would have been constructive no-

tice. Their sole error was to rely on Riadon to carry out the transaction as agreed upon. That in deceiving the plaintiffs he did not conceal his alleged delictions from those who might have occasion in the future to search the records is no defense. We hold that the trial court erred in granting the defendants' motion for summary judgment. Accordingly, the decree of the Chancery Court is reversed and the cause remanded for proceedings consistent with this opinion. Appellees will pay the costs of this appeal.

COOPER, C. J., and FONES, HENRY and HARBISON, JJ., concur.